UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NABHA MAHAMED,

                Petitioner,

    v.

MARKWAYNE MULLIN, *et. al.*,

                Respondents.

Case No. C26-1949-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nabha Mahamed is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Through counsel, she filed this 28 U.S.C. § 2241 habeas action to obtain release from immigration detention, arguing that her May 12, 2026, arrest and redetention after having been conditionally released into the United States violated her due process rights under the Fifth Amendment.  Dkt. 1, ¶¶ 1, 18-23, 38-48, 61-69.  She also challenges her redetention under the Administrative Procedure Act ("APA"), arguing that ICE abused its discretion when an unidentified individual revoked her release and authorized her redetention without notice and a hearing, or a change in the facts or circumstances since her initial release.  *Id*. ¶¶ 49-60.  Petitioner filed a sworn declaration in support of her petition.  Dkt. 1-3.  Government

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Respondents filed a return (Dkt. 5), along with sworn declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Andre Ouk ("Ouk Decl.") (Dkt. 6), and their counsel, Kristen Vogel ("Vogel Decl.") (Dkt. 7).  Petitioner filed a traverse in reply.  Dkt. 8.

Having considered the parties' submissions and the governing law, the Court GRANTS the petition in part and ORDERS that Petitioner be released from immigration detention within twenty-four (24) hours.  Remaining requests for relief are addressed below.

## I.     BACKGROUND

Petitioner is a native and citizen of Ethiopia, who first entered the United States on March 13, 2023, near San Ysidro, California.  Dkt. 1-3, ¶¶ 2-4; Ouk Decl., ¶¶ 3-4.  She asserts that she fled from Ethiopia after being subjected to female genital mutilation and because her father was killed by the Ethiopian government.  Dkt. 1-3, ¶ 3.  After facing persecution in Somaliland, she sought asylum in the United States.  *Id.*  She was apprehended by border patrol and claimed a fear of returning to Ethiopia.  *Id.*

While detained, DHS issued a warrant for her arrest, "as authorized by section 236 of the Immigration and Nationality Act" ("INA").  Dkt. 1-5.  She was also served with a Notice to Appear ("NTA") before an immigration court, which alleges Petitioner to be a noncitizen "present in the United States who has not been admitted or paroled."  Dkt. 1-2 at 2.  The NTA does not designate Petitioner as an "arriving alien."  *Id.*  After issuing the NTA, DHS determined, "[p]ursuant to the authority contained in section 236 of the [INA] and part 236 of title 8, Code of Federal Regulations," that Petitioner would be released from custody.  *See* Dkt. 1-6.

On March 15, 2023, Petitioner was released on her own recognizance, which required her enrollment in, and compliance with, an Alternatives to Detention ("ATD") program.  Dkt. 1-4 at

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

2, 4. The order authorizing Petitioner's release, like the warrant and NTA, was similarly issued "[i]n accordance with section 236 of the [INA] and applicable provisions of Title 8 of the Code of Federal Regulations[.]" *Id.* at 2.

While released, Petitioner filed an application for asylum and withholding of removal on June 23, 2023, which remains pending. Dkt. 1-8 at 4. Prior to her redetention at issue here, Petitioner lived and worked in the Seattle area since September 2024. Dkt. 1-3, ¶ 2.

On May 12, 2026, Petitioner arrived to a pre-scheduled ATD appointment at the Seattle Enforcement and Removal Operations ("ERO") field office. Ouk Decl., ¶ 10. Once at the appointment, "ERO officers informed Petitioner that she was under arrest due to [forty-two] violations of the ATD program." *Id.* She was handcuffed, had her belongings taken, and transferred to the NWIPC. Dkt. 1-3, ¶¶ 7-8.

On June 4, 2026, Petitioner filed the instant petition, challenging her redetention as unlawful. *See generally* Dkt. 1. She seeks release from immigration custody and injunctive relief related to any future redetention. *Id.* at 22.

## II.    LEGAL STANDARDS

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243. Habeas petitioners must prove by a preponderance of the evidence that they are entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

### III.    DISCUSSION

Petitioner raises three claims.  The first two assert that Respondents violated the APA after an unidentified official revoked her release and authorized her redetention without notice and a hearing, and without a change in circumstances demonstrating she was a danger or flight risk.  Dkt. 1, ¶¶ 49-60.  Her third claim, on which her petition is predominantly focused, challenges her redetention as violative of her Fifth Amendment right to due process.  *Id.* ¶¶ 61-69.

In response, Respondents contend that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b), and that she was not entitled to pre-deprivation process because both her ATD violations and status as an "applicant for admission" under § 1225(b) outweighed the risk of an erroneous deprivation of her liberty interest.  Dkt. 5 at 7.  As for her APA claims, Respondents first assert that the Court lacks subject-matter jurisdiction over them, but, as to the merits, argue that Petitioner has not demonstrated her redetention was an abuse of discretion.  *Id.* at 8-9.

### A.    Petitioner's Detention Authority

The parties disagree on which statute currently authorizes Petitioner's detention. *Compare* Dkt. 1, ¶ 63; Dkt. 8 at 2-4, *with* Dkt. 5 at 2-4.  Although Petitioner's habeas petition is largely grounded in due process, Respondents justify Petitioner's redetention, at least in part, as being authorized by the mandatory detention scheme under 8 U.S.C. § 1225(b).  *See* Dkt. 5 at 2-4.  Petitioner challenges Respondents' statutory classification argument in reply.  Dkt. 8 at 2-3. Accordingly, the Court resolves this threshold issue.

Section 1225 governs the inspection and processing of noncitizens at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2011).  It subjects those who are "seeking admission," but "not clearly and beyond a doubt entitled to be admitted," to mandatory detention pending

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

removal proceedings. *Id.* at 287-88 (citing § 1225(b)(2)(A)). In contrast, § 1226 generally governs the process of arresting and detaining noncitizens present inside the United States. *Id.* at 288; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Turning to Petitioner's case, neither the evidentiary record, nor DHS's treatment of Petitioner since her arrival in the United States support Respondents' position.

Despite acknowledging that "the *sole means of release* from detention pursuant to Section 1225(b) is temporary parole for urgent humanitarian reasons or significant public benefit," Respondents contend that Petitioner's release on March 15, 2023, should not be determinative of the relevant statutory authority because DHS has since "revisited its legal petition on detention and release authorities." Dkt. 5 at 3 (citing *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1308 (W.D. Wash. 2025) (emphasis added)). Respondents' reliance on *Rodriguez* is unavailing, as it is one of the earliest and most frequently cited cases in this District to reject the very argument they advance.

This Court agrees with the reasoning of *Rodriguez*: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez*, 802 F. Supp. 3d at 1322–23; *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) ("[T]he administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases

decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

Further, the Government has treated Petitioner as subject to discretionary detention under § 1226(a) since she entered the United States in 2023. "[W]here a petitioner has been 'treated by Respondents as subject to discretionary detention under [§ 1226(a)], rather than mandatory detention under [S]ection 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, C25-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, C25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). As discussed above, Petitioner was apprehended and released shortly after entering the United States—not pursuant to humanitarian parole, but rather on her recognizance as authorized by Section 236 of the INA, which is codified at § 1226. Ouk Decl., ¶ 6; Dkt. 1-4. *See also* Office of Homeland Security Statistics, Glossary: Release on Recognizance, https://ohss.dhs.gov/glossary (last visited July 6, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "[p]ursuant to section 236(a) of the INA"). The warrant and custody determination form issued to Petitioner were similarly authorized and issued in accordance with Section 236.

Petitioner was thereafter released to live in the United States, subject to the terms of her ATD. Nothing in the record suggests that Petitioner was released on humanitarian parole or "seeking admission" during the entirety of her time released in the United States. *See Del Valle Castillo*, 2025 WL 3524932, at *7 (finding noncitizen who was initially detained and released on

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

an order of recognizance initially detained under § 1226(a)).  The Court accordingly finds that Petitioner's detention is governed by § 1226(a).

**B.      *Mathews* and Due Process**

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands."  *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted).

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process.  The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz*, 53 F.4th at 1211, the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context and courts in this District employ the framework in cases challenging redetention under circumstances like Petitioner's here.  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

employing the *Mathews* factors in similar immigration contexts).  Here, the parties apply the *Mathews* framework to the circumstances of Petitioner's redetention but disagree on whether it affords relief.  *See* Dkt. 1, ¶¶ 43-48; Dkt. 5 at 6-8.

### 1.   Private Interest

Petitioner has a constitutionally protected interest in her continued liberty.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  When Petitioner was released from immigration custody shortly after entering the United States, she acquired a liberty interest protected by the Due Process Clause.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Here, Petitioner was conditionally released after their brief initial detention at the border and thereafter spent the vast majority of her time in the United States out of custody, establishing connections in reasonable reliance on her continued freedom.  She sought the assistance of an immigration lawyer, filed for asylum, and contends that she "followed [ICE's] instructions closely and has since done [her] best to comply with all given directions."  Dkt. 1-3, ¶¶ 4-5.  "[Noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]"  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).  Accordingly, the first *Mathews* factor weighs in Petitioners' favor.

### 2.   The Risk of Erroneous Deprivation and Value of Additional Safeguards

Providing effectively no pre-deprivation process prior to arresting and redetaining Petitioner created a high risk of erroneous deprivation of her liberty.  Respondents contend that,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

"[g]iven Petitioner's repeated ATD violations and status as an applicant for admission subject to mandatory detention under § 1225(b), the risk of erroneous deprivation would have been minimal." Dkt. 5 at 7. As explained above, the Court has already found that Petitioner's detention is governed under § 1226(a), rendering one of Respondents' asserted justifications wrong as a matter of law. The Court now turns to the other basis.

When ICE released Petitioner after her initial detention, it did so after determining—as required by regulation—that "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Courts in this District have found that arresting and detaining noncitizens who were initially detained and released without first reconsidering those factors poses a significant risk of erroneous deprivation. *See, e.g., E.A. T.-B.*, 795. F. Supp. 3d at 1323; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1202-03 (W.D. Wash. 2025). To the extent Respondents reconsidered any of these factors in relation to her alleged ATD violations, such evidence of that process, including what factors were considered, by whom, and whether it showed Petitioner to be a danger or flight risk, is not before the Court.

Moreover, Petitioner disputes the allegation that she violated the conditions of her release. Dkt. 1, ¶ 12; Dkt. 1-3, ¶ 8. Her declaration specifically addresses many of the alleged violations in detail. *See* Dkt. 1-3, ¶¶ 8-9. She contends that, "had she missed even one appointment, let alone so many, [the ATD program] would have immediately called me to report to their office, reprimanded me, and imposed additional penalties." *Id.* ¶ 8. Respondents contend that the violations are "documented through objective monitoring systems and easily verifiable." Dkt. 5 at 8. According to Officer Ouk, ERO relies on a contractor—"BI"—to run the ATD program. Ouk Decl., ¶ 11. Officer Ouk explains that BI "automatically pull[s]"

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

violation information into an ICE database, to which ERO has ongoing access. *Id*. Officer Ouk is not the Deportation Officer who documented the alleged violations in Petitioner's DHS immigration file, *see* Dkt. 7-1 at 4-6, but asserts that he "reviewed Petitioner's violations, which reflect that Petitioner missed biometric check-ins 21 times" and "violated her ATD requirements" by missing three virtual home visits. *Id.*

Despite being "easily verifiable," there is inconsistency amongst Respondents' own sources. By DHS's count, Petitioner had forty-two violations, but by Officer Ouk's, Petitioner had twenty-four. *Compare* Dkt. 7-1 at 4, *with* Ouk Decl., ¶ 11. Neither Respondents' return memorandum, nor the remainder of the evidentiary record, shed light on this discrepancy. Nor do Respondents acknowledge or respond to Petitioner's declaration, which addresses, in detail, many of the violations she is alleged to have committed. *See* Dkt. 1-3, ¶ 8. These unresolved questions demonstrate the high risk of an erroneous deprivation and the value in additional safeguards. Providing notice and an opportunity for Petitioner to challenge the factual bases for her redetention would have reduced the risk of an erroneous deprivation of her liberty interests. The second *Mathews* factor therefore weighs in Petitioner's favor.

3.    *Governmental Interest*

As for the third *Mathews* factor, Respondents assert that "the [G]overnment has an interest in efficient enforcement and ensuring Petitioner's appearance at removal proceedings," but do not connect those interests to Petitioner's alleged violations. Dkt. 5 at 8. Instead, they summarily conclude that "Petitioner's failure to adhere to her ATD conditions underscores this interest." *Id.* The Court is not convinced such vaguely asserted interests necessitated forgoing essentially any pre-deprivation process.

The Government does have an interest in enforcing immigration laws, securing removal of noncitizens, and in ensuring noncitizens appear at future immigration proceedings. *See Zadvydas*, 533 U.S. at 690; *Rodriguez Diaz*, 53 F.4th at 1208. However, it is difficult to reconcile the historical treatment of Petitioner's alleged violations with Respondents' post-hoc articulated interests here. First, if the alleged violations were so serious, why did the Government seemingly acquiesce in their alleged commission? Taking Respondents' evidence as accurate, Petitioner's first violation dates back to 2023. Yet, there is no evidence that Respondents sought to act on that noncompliance, despite having regular, in-person contact with Petitioner. Further, if the Government was concerned about Petitioner's compliance during her release, why does DHS rely on a "system query" to learn of any purported violations? Finally, the fact that Petitioner was only arrested after she showed up, on her own volition, to a pre-scheduled appointment further undermines any argument that the Government's interests outweighed the value of pre-deprivation process.

Nor would the Government's interests have been hindered by providing Petitioner with individualized pre-deprivation process. While providing a hearing before redetaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Here, ICE was previously persuaded that Petitioner posed no danger to the community and was not a flight risk, yet she was arrested without notice and process as if exigency required her immediate apprehension. If the Government genuinely wanted to address

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

Petitioner's violations, on these facts, it needed to provide pre-deprivation process and a hearing. The third *Mathews* factor also weighs in Petitioner's favor.

In sum, all factors weigh in Petitioner's favor.  The Court finds that Respondents failed to provide Petitioner with the process owed to her under the Due Process Clause.  Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy.  This conclusion aligns with a broad consensus among district courts.  *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

### C.    Petitioner's Remaining Claims

Having found Petitioner's redetention required pre-deprivation notice and an opportunity to challenge the factual bases for her redetention under *Mathews*, the Court does not reach Petitioner's APA claims, as the requested relief is duplicative.  The Court therefore turns to Petitioner's request for injunctive relief.

Petitioner seeks to prohibit the Government from redetaining her "during the pendency of her removal proceedings absent prior written notice and a pre-deprivation hearing before a neutral decisionmaker," at which the Government bears the burden to prove by clear and convincing evidence that "detention is necessary."  Dkt. 1 at 22.

While the record shows that Respondents redetained Petitioner without adequate process, it does not necessarily follow that she will face the same risk of harm after being released under this Court's order.  To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A party must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008). Petitioner does not meaningfully engage with the *eBay* factors in her petition or otherwise develop a sufficient factual record to support her request. It is therefore denied without prejudice.

### IV.    CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. 1) in part and ORDERS that Petitioner be RELEASED from immigration detention within twenty-four (24) hours on conditions consistent with those in place at the time of her redetention. Respondents shall file a certification within forty-eight (48) hours that Petitioner has been released. Petitioner's APA claims are MOOT and her request for injunctive relief is DENIED. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 7th day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13